# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CLARE LAMB, | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No.: 2:14-cv-01550-SGC ) |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION[1]

The plaintiff, Clare Lamb, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Lamb timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Lamb has at least a high school education and has previously worked as a teller and a loan clerk. (Tr. at 29-30, 206, 207, 222-29). In her application for DIB, she claimed that she became disabled on June 1, 2005, due to bipolar disorder, depression, acute manic depression, hypertension, hyperlipidemia, insomnia, asthma, gastroesophageal reflux disease, blackout spells, a hysterectomy, and pancreatitis. (*Id.* at

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

1

166, 205). After her claims were denied, Lamb requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 99-100). Following a hearing, the ALJ denied Lamb's claims. (*Id.* at 17-31). Lamb was 45 years old when the ALJ issued his decision. (*Id.* at 31, 166). After the Appeals Council declined to review the ALJ's decision (*id.* at 1-4), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Lamb initiated this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show that she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 Fed. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful

activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). At the first step, the ALJ determined Lamb last met the insured status requirements of the Social Security Act on June 30, 2009, and has not engaged in substantial gainful activity since her alleged onset date of June 1, 2005. (Tr. at 22).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 404.1508. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).[2]  "[A]n impairment can be considered as

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

3

not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Lamb has the following severe impairments: major depressive disorder and migraines. (Tr. at 22-23).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26. The claimant bears the burden of proving her impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Lamb does not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (Tr. at 23-25).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545. A claimant's RFC is the most he can do despite his impairment. *See id.* at § 404.1545(a)(1). At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e), 404.1560(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The claimant bears the burden of proving that her impairment prevents her from performing her past relevant work. *Reynolds-Buckley*, 457 Fed. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined Lamb has the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations, namely that she is limited to simple, routine, repetitive tasks in a low-stress environment, defined as one involving only occasional decisionmaking and occasional changes in routine, no interactions with the public, and only occasional interactions with co-workers. (Tr. at 25-29). At the fourth step, the ALJ determined Lamb is not capable of performing any of her past relevant work. (*Id.* at 29).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that

5

exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering Lamb's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Lamb can perform, such as those of a packer, bundler, carton filler, laundry worker, folder, and linen grader. (Tr. at 30-31). Therefore, the ALJ concluded Lamb is not disabled. (*Id.* at 31).

### III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Lamb first argues the Appeals Council erred by failing to give adequate weight to opinions of her treating physician, Thomas M. Nolan, M.D., submitted as new evidence after the ALJ issued his decision but before the Appeals Council declined review, or to even consider that opinion at all. (Doc. 10 at 6-9). Second, she argues the ALJ failed to evaluate her husband's testimony properly. (*Id.* at 9-13).

### A. Treating Physician's Opinion

On February 27, 2013, Dr. Nolan completed a supplemental questionnaire indicating that based on Lamb's "current psychiatric impairment," she has a marked[3]

---

[3] The supplemental questionnaire defines "marked" as "[a]n impairment which seriously affects ability to function." (Tr. at 330).

degree of difficulty in maintaining social functioning; extreme[4] deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner in a work setting or elsewhere; extreme impairment of her ability to respond to customary work pressures; and extreme impairment of her ability in a work setting to understand, carry out, and remember instructions, respond appropriately to supervision, respond appropriately to co-workers, perform simple tasks, and perform repetitive tasks.  (Tr. at 330-31).  Dr. Nolan indicated these limitations and their severity would have applied prior to June 30, 2009, Lamb's date last insured.  (*Id.* at 331).  The ALJ issued his decision on February 1, 2013.  (*Id.* at 31).  Accordingly, the ALJ did not consider Dr. Nolan's opinions in determining Lamb is not disabled.  However, Lamb did submit the supplemental questionnaire completed by Dr. Nolan to the Appeals Council with her request for review.  (*Id.* at 325-31).

     Generally, a claimant may present new evidence at each stage of the administrative process.  *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.900(b).  The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'"  *Ingram*, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)).  New evidence is material if " 'there is a reasonable probability that the new evidence would change the administrative outcome.'"  *Flowers v. Comm'r of Soc. Sec.*, 441 Fed. App'x 734, 745 (11th Cir. 2011) (quoting *Hyde v.*

---

[4] The supplemental questionnaire defines "extreme" as "[s]evere impairment of ability to function."  (Tr. at 330).

*Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).  New evidence is chronologically relevant if it "relates to the period on or before the date of the ALJ's decision."  20 C.F.R. § 404.970(b).  If the Appeals Council refuses to consider new evidence that is material and chronologically relevant, its decision is subject to judicial review because it is an error of law.  *Barclay v. Comm'r of Soc. Sec.*, 274 Fed. App'x 738, 743 (11th Cir. 2008) (citing *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  "The [Appeals Council] may deny review if, even in the light of the new evidence, it finds no error in the opinion of the ALJ."  *Pritchett v. Comm'r, Soc. Sec. Admin.*, 315 Fed. App'x 806, 814 (11th Cir. 2009) (citing *Ingram*, 496 F.3d at 1262).  "[The Appeals Council's] decision to deny review in light of new evidence is subject to judicial review."  *Pritchett*, 315 Fed. App'x at 814 (citing *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998)).  In undertaking this review, a court " 'look[s] at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the [Appeals Council] must consider in making its decision whether to review an ALJ's decision.'"  *Pritchett*, 315 Fed. App'x at 814 (quoting *Falge*, 150 F.3d at 1324).  If so, " 'a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.'"  *Walker v. Comm'r of Soc. Sec.*, 404 Fed. App'x 362, 367 (11th Cir. 2010) (quoting *Ingram*, 496 F.3d at 1262).

Lamb first appears to imply the Appeals Council erred by failing to consider her new evidence.  (Doc. 10 at 8).  Contrary to Lamb's assertion, the Appeals Council did consider the supplemental questionnaire completed by Dr. Nolan that Lamb submitted with her request for review.  In its decision denying review, the Appeals Council stated it

considered this new evidence and found it did not provide a basis for changing the ALJ's decision. (Tr. at 2, 5). Although Lamb appears to take issue with the absence of explicit discussion of the supplemental questionnaire completed by Dr. Nolan in the Appeals Council's decision denying review, the Appeals Council is not required to explain its rationale for denying a request for review. *Mitchell v. Comm'r, Soc. Sec.*, 771 F.3d 780, 785 (11th Cir. 2014). For these reasons, the Appeals Council did not err by failing to consider the new evidence presented by Lamb.

In the alternative, Lamb argues the Appeals Council erred by failing to give adequate weight to the opinions Dr. Nolan expressed in the supplemental questionnaire. (Doc. 10 at 9). She notes the medical opinions of a treating physician are entitled to substantial weight absent good cause. (*Id.* at 6-7).

As an initial matter, Lamb has failed to show Dr. Nolan's opinions are inconsistent with the ALJ's assessment of her RFC. Dr. Nolan opined Lamb's "current psychiatric impairment" would impose extreme limitations on her ability to perform in a work setting. (Tr. at 330-31). The ALJ determined Lamb has the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations that account for her severe mental impairment of major depressive disorder. (*Id.* at 25-29). Lamb does not explain how she believes Dr. Nolan's opinions regarding her functional capacity and the ALJ's assessment of her RFC are inconsistent. *See Walker*, 404 Fed. App'x at 367 (holding Appeals Council did not err in denying review where new evidence did not contradict ALJ's determination of claimant's RFC).

Even if Dr. Nolan's opinions regarding Lamb's functional capacity are inconsistent with the ALJ's assessment of Lamb's RFC, the supplemental questionnaire reasonably could not be expected to alter the ALJ's decision and does not render the denial of benefits erroneous. A treating physician's opinion may be disregarded if there is good cause for doing so. "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). In completing the supplemental questionnaire, Dr. Nolan did not explain the basis for his opinions regarding Lamb's functional capacity. *See Burgin v. Comm'r of Soc. Sec.*, 420 Fed. App'x 901, 903 (11th Cir. 2011) (holding Appeals Council was free to give little weight to conclusory assertions contained in questionnaires completed by claimant's health care providers because "they merely consisted of items checked on a survey, with no supporting explanations"); *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 Fed. App'x 11, 13-14 (11th Cir. 2012) (holding ALJ did not err in discounting opinions of claimant's treating physician where no specific objective medical evidence was cited in their support).

Furthermore, Dr. Nolan's opinions regarding Lamb's functional capacity are not consistent with Lamb's medical records. In January 2006, Lamb was admitted to the psychiatric unit of Brookwood Medical Center for severe depression and suicidal ideation with a plan to overdose on medication. (Tr. at 342-49). On discharge, Narithookil S.

11

Xavier, M.D. noted Lamb had improved, her depression was under better control, and she was having no suicidal ideation. (*Id.* at 344). Lamb was admitted to the psychiatric unit of Brookwood Medical Center again in February 2006. (*Id.* at 336-39). She complained of worsening depression, absent spells, and generalized mental dysfunction. (*Id.* at 336-38). On discharge, Garry S. Grayson, M.D. noted that while Lamb "ha[d] not had a very good sense of how to combat [her mental illness] actively," "[s]he show[ed] a generally brightening affect and a generally stiffening resolve to perhaps tackle regaining control of her life more actively." (*Id.* at 336). Dr. Nolan examined Lamb on March 1, 2006, and found her mental status was intact. (*Id.* at 501). Lamb merely requested Dr. Nolan refill prescriptions for a muscle relaxant and a sleep aid, which he did. (*Id.*). In August 2006, Dr. Nolan referred Lamb to a neurologist for complaints of a headache, difficulty sleeping, and trouble remembering and advised Lamb to continue seeing her counselor. (*Id.*).

Lamb began seeing Nasrollah Eslami, M.D., a neurologist, in October 2006. (*Id.* at 356-57). Dr. Eslami noted Lamb seemed to be quite depressed and prescribed a medication to treat her depression and possible seizure disorder. (*Id.* at 356). On November 3, 2006, Lamb reported to Eslami that she felt a lot worse, had been crying, and could not sleep at night. (*Id.*). Dr. Eslami advised Lamb she needed to see a psychiatrist. (*Id.*). Lamb stated she did not want to see her prior therapist, and Dr. Eslami noted he would try to schedule an appointment with a mental health clinic near her home. (*Id.*). Lamb's husband accompanied Lamb to Dr. Eslami's office on November 17, 2006. (Id. at 355). He reported he felt the medication Dr. Eslami had

12

prescribed had really helped his wife's depression. (*Id.*). Dr. Eslami noted that although Lamb was rather quiet and withdrawn, she was more talkative compared to previous visits. (*Id.*). In December 2006, Lamb reported to Dr. Eslami that although she stayed anxious all of the time, her depression had improved. (*Id.*). In April 2007, Dr. Eslami offered Lamb a psychiatric evaluation regarding her depression and anxiety. (Id. at 354). Lamb declined the offer, stating she had already seen two psychiatrists and neither helped her. (*Id.*). She further stated she was overall content with her current medication regimen. (*Id.*). In July 2007, Lamb's husband accompanied Lamb to Dr. Eslami's office and reported that in his opinion, her mood had improved 10 times. (*Id.* at 353).

In October 2007, Dr. Nolan noted Lamb came in for a follow-up regarding her depression and other ailments. (*Id.* at 498). However, Dr. Nolan did not note any findings regarding Lamb's mental state and merely refilled her maintenance medications and changed her muscle relaxant. (*Id.*). On June 15, 2009, Lamb saw Dr. Nolan for anxiety related to her husband's recent arrest. (*Id.* at 492). She stated the anxiety medication she was taking was not helping and asked Dr. Nolan to prescribe a different medication for her anxiety, which he did. (*Id.*). On June 25, 2009, Dr. Nolan noted Lamb "seem[ed] to be coping with [her husband's recent legal problems] well at th[at] point in time." (*Id.* at 491).

In June 2010, Lamb reported to Dr. Nolan she was depressed and wanted to see a different counselor. (*Id.* at 488). Dr. Nolan noted he felt like Lamb's main problem was her depression and that he was going to refer Lamb for counseling and start her on a medication used to treat depression. (*Id.*). In July 2010, Dr. Nolan noted Lamb was well

and refilled her maintenance medications. (*Id.*). In August 2010, Lamb saw Dr. Nolan on account of a left wrist contusion and abrasion on her back. (*Id.* at 487). She told Dr. Nolan she injured herself retrieving something from her garage and later fell down a bank trying to get to a deer she thought she hit with her car. (*Id.*). Dr. Nolan opined Lamb had experienced a hysterical reaction conversion. (*Id.*). Although he advised her to let him refer her for psychiatric care, she stated she did not want to do that. (*Id.*).

Nonetheless, in September 2010, Lamb presented to Emily Lazenby, M.D. for a psychiatric evaluation on Dr. Nolan's referral. (*Id.* at 397-99). Dr. Lazenby treated Lamb for depression and anxiety through November 2010 and referred Lamb to a licensed clinical social worker, who also treated Lamb through November 2010. (*Id.* at 397-419). During her last visit with Dr. Lazenby, Lamb reported feeling some better. (*Id.* at 418).

In December 2010, Dr. Nolan noted Lamb came in for a follow-up regarding her depression and that she was "actually doing quite well" and had no new complaints. (*Id.* at 487). He refilled her medication because she reported having difficulty getting in to see her counselor or psychiatrist. (*Id.*). In January 2011, Dr. Nolan noted Lamb came in for a follow-up regarding her bipolar disorder. (*Id.* at 486). He noted she certainly had severe depression and that, although she was still seeing Dr. Lazenby, he had agreed to refill her medication so she would not have to travel to Birmingham. (*Id.*). In February 2011, Dr. Nolan noted Lamb came in for a follow-up regarding her bipolar disorder. (*Id.* at 485). He noted Lamb was "doing pretty well with everything" and "just needed her medicine refilled." (*Id.*).

Lamb was admitted to the psychiatric unit at Brookwood Medical Center in November 2011 after presenting with suicidal ideation with a plan to overdose on medication. (*Id.* at 889-910). On discharge, Christopher S. Stanley, M.D. noted she had progressed to the point her affect was brighter. (*Id.* at 889).

Although Lamb presented with anxiety and depression in August 2012, Dr. Nolan noted her initial symptoms had improved and that she reported her functioning as "not difficult at all." (*Id.* at 937). He further noted Lamb was oriented to time, place, person, and situation; had normal insight; exhibited normal judgment; and demonstrated the appropriate mood and affect. (*Id.* at 938).

Lamb's longitudinal medical record does not support the limited degree of functioning to which Dr. Nolan opined in the supplemental questionnaire. As of her date last insured, the record documents symptoms of depression that waxed and waned but not clear, consistent functional limitations. This is true even after Lamb's date last insured. In fact, the most recent treatment note in the record—that of Dr. Nolan dated August 2012—indicates Lamb reported no difficulty in functioning. (*Id.* at 937). Accordingly, the opinions Dr. Nolan expressed in the supplemental questionnaire reasonably could not be expected to alter the ALJ's decision and does not render the denial of benefits erroneous.

### B. Husband's Testimony

Lamb next argues the ALJ failed to evaluate her husband's testimony properly. (Doc. 10 at 9-11). Lamb's husband testified that between 2006 and 2009 his wife was in a deep depression and would pass out or black out when she got up and moved around.

(Tr. at 62). He further testified she hid herself in the bedroom and never left. (*Id.* at 65). He testified she had memory problems. (*Id.* at 67-68). Finally, he testified that during the year before she was let go from her last job, she would cry every morning before she left for work and had at least one anxiety attack. (*Id.* at 68-69). Although the ALJ did not explicitly state the weight he gave Lamb's husband's testimony, he expressly gave little weight to similar statements Lamb's husband made in a third-party function report dated May 5, 2011. In that report, Lamb's husband stated Lamb "sleeps a lot," "[h]as problems remembering," "held a steady job but now barely leaves the home," and has a "fear of leaving the safety of the home." (*Id.* at 230-37). The ALJ gave these statements little weight because the third-party function report was dated well after Lamb's date last insured. (*Id.* at 29). He further found he could not rule out secondary gain as a motivating factor because Lamb's husband is a member of Lamb's household and was the sole breadwinner for the family until a recent accident. (*Id.*).[5]

The ALJ also explicitly discounted the credibility of Lamb's own testimony and statements regarding the limiting effects of her impairments. The substance of that evidence is similar to the testimony of Lamb's husband. Specifically, Lamb testified she suffers from depression, dizzy spells, and fainting and constantly forgets things. (*Id.* at 45-47, 54-61). In a function report, she stated she has memory problems, does not handle stress or changes in routine well, fears facing new people, and was laid off from a job because she "started getting annoyed at people" and her "attitude came down." (*Id.* at

---

[5] Lamb does not challenge the ALJ's decision to discredit the third-party function report completed by her husband.

238-45). The ALJ noted Lamb's testimony and statements and found them lacking in credibility as inconsistent with the objective medical evidence, Lamb's delay in applying for benefits,[6] and Lamb's ability to manage her personal care, drive, shop, and prepare simple meals. (*Id.* at 25-29).[7]

"The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman v. Barnhart*, 220 Fed. App'x 957, 959-60 (11th Cir. 2007) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "Although this circuit does not require an explicit finding as to credibility . . . the implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). Here, because the ALJ expressly discredited the statements Lamb's husband made in a third-party function report, as well as Lamb's own testimony and statements regarding the limiting effects of her impairments, he impliedly discredited the similar statements Lamb's husband made during the hearing. *See Clyburn v. Comm'r Soc. Sec. Admin.*, 555 Fed. App'x 892, 894-95 (11th Cir. 2014) ("Because the ALJ expressly rejected as not credible [the claimant's] testimony about the severity of her pain and the extent of her limitations, he impliedly rejected the statements in the [claimant's sister's] affidavit as well."); *East v. Barnhart*, 197 Fed. App'x 899, 901 n.3 (11th Cir. 2006) ("Because [the claimant's mother's] statements in the [daily activities] questionnaire duplicated and corroborated [the

---

[6] Although Lamb claims she became disabled on June 1, 2005, she did not apply for benefits until March 2011. (*Id.* at 86, 166).
[7] Nor does Lamb challenge the ALJ's credibility determination as to her own testimony and statements.

claimant's] testimony, which the ALJ explicitly found not credible, it is 'obvious' that the ALJ implicitly rejected [the claimant's mother's] statements."); *Taylor v. Comm'r of Soc. Sec. Admin.*, 213 Fed. App'x 778, 779-80 (11th Cir. 2006) (holding that although ALJ did not make explicit credibility finding as to testimony of claimant's primary caretaker, ALJ impliedly discredited that testimony by assigning significant weight to evidence from evaluating physician).

Lamb notes the third-party function report completed by her husband does not relate to the period in question. (Doc. 10 at 10). She appears to suggest it would be improper to impliedly discredit her husband's testimony relevant to the period in question based on the ALJ's rejection of a third-party function report irrelevant to that period. Regardless, the ALJ's other reason for discrediting the third-party function report, as well as his reasons for discrediting Lamb's testimony and statements, apply equally to the testimony of Lamb's husband. Lamb also cites the Eleventh Circuit's decision in *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990) to support her position. (Doc. 10 at 10). In that case, the circuit court vacated the ALJ's decision and remanded for further proceedings because the ALJ's decision did not review or give reasons for rejecting testimony of the claimant's daughter and neighbor. *Lucas*, 918 F.2d at 1574. The court instructed the ALJ to state the weight accorded to each item of impairment evidence and the reasons for his decision to accept or reject that evidence. *Id.* Subsequently, the Eleventh Circuit has distinguished *Lucas* where the testimony the ALJ did not consider specifically was merely cumulative of other testimony and evidence. *See De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 Fed. App'x 827, 832 (11th Cir. 2014). Here, as stated, the

testimony of Lamb's husband is cumulative of other evidence, for which reason *Lucas* is inapposite.

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 21st day of September, 2015.

*Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE